**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CHARLENE YOUNG,**

        **Plaintiff,**

**v.**                                   **Case No.  8:09-cv-1056-T-17TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/

**<u>REPORT AND RECOMMENDATION</u>**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

**I.**

Plaintiff was forty-five years old when she first applied for benefits and was fifty-five years old at the time of her July 2006 administrative hearing.[1]  As reflected in administrative paperwork, she stands 5 feet tall and weighed 116 pounds.  (R. 156).  Plaintiff has a ninth grade education.  Her past relevant work was as a bank teller, offer manager/auditor, and store manager.  Plaintiff applied for disability benefits in March 1996, alleging disability as of July 19, 1995, by reason of pain in her neck, back, hip, and legs.

_____

[1]Plaintiff was forty-four years old at the alleged onset date of disability and forty-eight years old when her insured status expired in June 1999.

Plaintiff's application was denied originally and on reconsideration.  This case has since had a protracted history.

From 1996 to the present, four administrative hearings were conducted and four decisions were rendered by administrative law judges.  The first administrative hearing before an administrative law judge ("ALJ") occurred on April 21, 1997.  (R. 927-47).  The ALJ denied Plaintiff's claim (R. 88-98), and Plaintiff appealed the decision.  The Appeals Council vacated the opinion and remanded Plaintiff's case for further consideration on April 27, 1999.  (R. 313-15).  The second administrative hearing was conducted on October 29, 1999.  (R. 948-64).  The same ALJ again denied Plaintiff's claim.  (R. 601-11).  Plaintiff appealed, and the Appeals Council again vacated the opinion and remanded Plaintiff's case for further consideration on May 24, 2002.  (R. 613-16).  A third administrative hearing was conducted on December 4, 2002, before a different ALJ.  (R. 965-1007).  The ALJ denied Plaintiff's claim (R. 709-24), and Plaintiff again appealed.  Once again, the Appeals Council vacated the opinion and remanded Plaintiff's case for further consideration.  (R. 726-28).

The last administrative hearing was conducted on July 17, 2006, over which the ALJ from the third hearing presided.  (R. 1010-1062).  The ALJ again denied Plaintiff's claim (R. 24-36) and Plaintiff appealed.  This time, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner.  (R. 13-16).  Plaintiff timely sought review of that decision with this court.

The last two administrative hearings are relevant to Plaintiff's instant claims. Plaintiff and her husband testified at the third hearing conducted on December 4, 2002.[2] Their testimony is relevant on this appeal because the ALJ did not take testimony from them during the last hearing, purportedly because they had already testified and Plaintiff's date last insured had long since expired. Plaintiff now challenges certain of the ALJ's findings with respect to their testimony. At the last hearing, the ALJ took testimony only from Dr. Owen Linder, a medical expert, and Steven E. Simon, a vocational expert. That testimony is challenged in part by Plaintiff on this appeal. The testimony from these two hearings is addressed in turn.

At the third hearing on December 4, 2002, Plaintiff was represented by counsel and testified on her own behalf.[3] Her husband, Earl W. Young, also testified. Additionally, a vocational expert was called by the ALJ.[4]

In essence, Plaintiff testified that she was unable to work due to pain in her neck and back and depression. By her testimony, she became disabled in June 1995 after she injured her neck and lower back in an automobile accident. At that time, Plaintiff testified she suffered headaches, dizziness, sharp neck pain that radiated into her left arm and shoulder, and sharp lower back pain that radiated down her left leg and caused numbness. Some two years later, in July 1997, Plaintiff had surgery on her neck. After the fusion, she was in a

---

[2]The ALJ incorrectly stated that the Plaintiff appeared and testified at the last administrative hearing on July 17, 2006. (R. 24).

[3]Plaintiff was represented by counsel at each hearing.

[4]The VE's testimony is not recounted herein as it is unrelated to the issues before us.

neck brace for eight or nine weeks, then a soft cervical collar for two months.  After that recuperation period, she suffered nagging pain in her neck, left shoulder, and back; constant pain in her neck and shoulder; sharp constant pain in her lower back that radiated to her left buttock, mostly when sitting; and left leg numbness that was worse when sitting.  By her testimony, lying down with ice packs helped, as did medication that she took at night.  At some point in 1998 or 1999, her doctor prescribed an anti-depressant because she was being mean to her husband and children.  According to Plaintiff, this was probably due to the pain and because she could not work or do things she used to do.  She was sad most of the time and wanted to be alone.  She mostly kept to herself and stayed in her bedroom.  She also had memory problems and had to write things down.  Plaintiff did not seek mental health treatment at that time because she did not want to "hear what they had to say."  During this period, Plaintiff was taking Zoloft, Darvocet, Celebrex, and one other medication that she could not remember.  The medication helped a little bit but upset her stomach and made her dizzy.

Plaintiff described a typical day as waking up at 6:00 or 6:30 a.m. because she could not sleep; she was up and down all night.  She would spend most of the day in bed or lying in a lounge chair watching television.  She would lie down for thirty to forty-five minutes with ice packs on her neck and back.  She had no energy to do anything.  She tried to do housework, and when she did she ended up in bed the next day.  Plaintiff only drove when her husband was not home, maybe two or three times a week to the grocery store.  She was afraid to drive because of the accident; she was afraid of hurting her neck again.  As for her functional capacity during the pertinent period, Plaintiff testified that picking up a five-pound

4

bag of sugar strained her neck and back.  She could sit comfortably about five minutes and then her leg would go numb, tingling down her leg to her foot.  Standing did not affect her leg as much but sometimes her left knee gave out.  She estimated that she could probably sit comfortably for about two and half to three hours during a workday and stand in one position for about five to ten minutes at a time before her back and left leg would hurt.  If she could get up and down when needed, Plaintiff indicated that she could probably stand comfortably about four or five hours in an eight-hour workday.  (R. 968-88, 994).

Plaintiff's husband of almost thirty-one years testified next.  According to Mr. Young, after the accident Plaintiff was in a lot of pain.  She was up and down all the time and complained about her neck and back.  She was unable to do the dishes and clean.  He testified that her pain continued after the surgery and she was constantly miserable.  They had to get separate bedrooms, and it got to the point that Plaintiff was hard to live with.  Her mental attitude changed.  She became irritable all of the time and could not work or help her family.  At one point, Plaintiff told him she would be better off dead.  He tried to get her to get help but both of them were "old school;" she refused to get help because people would think she was crazy.  Mr. Young also testified that Plaintiff's medications made her not herself.  She did not drive much because of her medications.  Her memory and concentration were not the same.  Things slipped her mind and she had to put things on a calendar.  (R. 989-93).

At the hearing on July 17, 2006, Dr. Linder testified that his review of the administrative file revealed Plaintiff had medically determinable impairments of cervical strain that gave radicular symptoms in her arms and low back symptoms during the period at issue, i.e., from her alleged onset date through her date last insured in June 1999.  By his

review, while Plaintiff's neck fusion was not successful because it was clear that she continued to have pain after the surgery, her impairments did not meet or equal that of a listed impairment.  By his reading of the evidence, Plaintiff retained the functional capacity to perform a limited range of sedentary work with a sit/stand option during the period at issue.

When questioned by Plaintiff's attorney as to how long he thought Plaintiff could stand and walk during an eight-hour period, Dr. Linder estimated Plaintiff could walk for fifteen minutes every two hours, or one hour total.  Regarding Plaintiff's ability to sit, Dr. Linder opined that Plaintiff could sit for six hours total in an eight-hour workday.  On questioning by the VE, he then opined that the medical evidence and the physical therapy evidence indicated that Plaintiff could "put in eight hours of sitting and standing if [she] could alternate."  Upon further questioning by counsel, Dr. Linder clarified that his testimony about the ability to walk for one hour pertained only to walking and not walking and standing.  Thus, it was his estimate that Plaintiff could walk and stand for one hour each.[5]  Dr. Linder also testified in response to further questioning from the ALJ and counsel on other physical limitations that are not challenged on this appeal, i.e., climbing, balancing, stooping, squatting, crouching, kneeling, crawling, reaching, pushing/pulling, and exposure to certain hazards.  (R. 1011-1047).

Neither the ALJ nor Plaintiff's counsel specifically asked Dr. Linder whether his review of the record revealed that Plaintiff had a mental impairment and any resulting mental limitations.

─────────────────────

[5]Counsel questioned him about changing his testimony on that point, and Dr. Linder testified that he had not, then said "I'm guilty."

Dr. Simon, the VE, testified next.  He first testified upon a hypothetical assuming Plaintiff's age, education, and work experience, with the capacity for sedentary work with a sit/stand option at will where the individual could stand for at least one hour and walk for at least one hour but could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs; could never balance; could occasionally stoop, crouch, and kneel; could never crawl; could frequently reach; could be exposed to vibration only insofar as the individual would have personal control as to when it began and when it ended and that they would have the full option to determine when that occurred; limited to working in a climate controlled environment; should never be exposed to heights, moving machinery, or other hazardous situations; and could perform pushing and pulling provided it did not involve pushing and pulling more than ten pounds.  Based on that hypothetical, the VE testified that the individual would not be capable of performing any of Plaintiff's past work.  He testified further, however, that the individual would be capable of performing other work activity, including that of information clerk, appointment clerk, order clerk, food and beverage clerk, and cashier.  And, those jobs would allow a person to be absent once a month.  If the individual could not maintain work activity for a full eight-hour workday, the VE indicated there would be no jobs.  If the individual was absent more than that, the VE stated all jobs would be eliminated.

Upon questioning by Plaintiff's counsel, the VE indicated if the individual could only stand and walk a total of one hour in an eight-hour workday and sit a total of six hours in the same, the individual could not sustain an eight-hour workday.  Counsel then inquired about the impact on jobs if the individual had to lie down during the course of her eight-hour

day due to pain and her mental health status.  The VE sought further clarification, and the

ALJ asked him to assume that the individual needed to lie down during normal breaks and

lunch hours.  The VE indicated that such would not necessarily preclude the performance of

the jobs identified unless there was no place to lie down, but there would be some minimum

reduction in the number of jobs.  If the individual had to lie down during non-break or non-

lunch periods, the jobs would be precluded.  When asked by counsel what percentage of

employers have a place for employees to lie down, the VE responded that he did not have

specific figures on that, but the norm was there would probably be a place to do so.

Referencing the testimony of Plaintiff and her husband, counsel next inquired how memory

and concentration difficulties, as well as low energy, would affect the ability to perform those

jobs.  The ALJ interrupted, stating those were too vague.  Counsel then asked if the jobs the

VE identified require memory and concentration and following instructions.  The VE testified

that they did.  The VE also indicated that if the individual were to fall asleep during the

course of the day, it would prevent the performance of the jobs identified.  Because those jobs

involved dealing with the public, the VE indicated further that it would be very difficult to

doze off and maintain production standards.  Lastly, the VE stated that it would not have been

helpful for him to have heard the Plaintiff's testimony or that of her husband, or counsel's

recap of the same.  (R. 1047-57).

      Also before the ALJ were medical records outlining the Plaintiff's medical history.

These matters are addressed adequately by the parties' memoranda and are not set out herein

in detail.  Pertinent to this appeal is Plaintiff's date last insured, June 30, 1999.

By his decision of February 7, 2007, the ALJ determined that while Plaintiff had combined severe impairments related to cervical disc disease with spondylosis, spinal stenosis, lumbosacral strain, and was status post anterior cervical diskectomy at the C5-6 levels,[6] she nonetheless had the residual functional capacity to perform a limited range of sedentary exertional work.  Upon this determination and medical and vocational expert testimony, the ALJ concluded that although Plaintiff could not perform her past work, she could perform jobs available to her in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 26-36).  The Appeals Council considered arguments from counsel and denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See*

---

[6]The ALJ concluded that Plaintiff's alleged depression would not have caused a significant limitation in her ability to perform basic work activities.  (R. 32).

9

*id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises four issues on appeal.  As stated by the Plaintiff, they are as follows:

(1)     The ALJ erred in refusing to comply with the Order of the Appeals Council by failing to evaluate the hearing testimony of the Claimant's husband; failing to assess the husband's credibility; and refusing to obtain the testimony of a medical expert to clarify the mental limitations during the period at issue prior to expiration of her disability insured status on June 30, 1999;

(2)     The ALJ erred in failing to make a proper credibility finding as to the Claimant's testimony, and erred in improperly discrediting the Claimant's complaints of pain and subjective symptoms;

(3)     The ALJ erred in determining that the Claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy; and

(4)     The ALJ erred in finding that the Claimant's depression does not cause a significant limitation in the Claimant's ability to perform basic work activities.

In light of these errors, Plaintiff requests that the court reverse the ALJ's decision and award benefits.  In the alternative, Plaintiff requests that the court reverse the ALJ's decision and remand the case for further evaluation.  (Doc. 17 at 3-10).

Because they are related, I address the first and fourth claims together.  By her fourth claim, Plaintiff argues that the ALJ erred by finding that her depression did not significantly limit her ability to perform basic work activities.  According to Plaintiff, the testimony of her and her husband demonstrates that she has a severe mental impairment.  Plaintiff also points to the records of Leon D. Prockop, M.D., who reported that she had problems with memory and depression with very little interest in life, and a report from Michael Shahnasarian, Ph.D.,

who reported that she was "experiencing significant problems with depression" and that he was "quite concerned about her mental health."  (Doc. 17 at 9-10).

In response, the Commissioner contends that the ALJ properly evaluated Plaintiff's limitations from depression and concluded that the impairment was non-severe.  Furthermore, the Commissioner contends no error occurred because the ALJ did not end his analysis at step two.  (Doc. 18 at 14-16).

By her first claim, Plaintiff contends that the ALJ erred by failing to comply with the Appeals Council's Remand Order by not (1) assessing the credibility of her husband's prior testimony or calling upon her husband to testify on remand even though he was present at the last administrative hearing, and (2) obtaining the testimony of a mental health expert.  To support her claim, Plaintiff cites to three district court cases wherein a remand or an award of benefits was determined to be the appropriate remedy for failing to abide by an order of the Appeals Council.  (Doc. 17 at 4-6).

In response, the Commissioner contends that the ALJ properly complied with the order of the Appeals Council as it pertained to the testimony of Plaintiff's husband and the use of a medical expert.  As for the use of a medical expert, the Commissioner notes that the Appeals Council's order did not require the ALJ to obtain the testimony of a mental health expert.  Rather, it required only that the ALJ obtain the testimony of a medical expert to clarify Plaintiff's physical and mental limitations, which he did.  The Commissioner also notes that assessments of a claimant's functional capacity are a function of the ALJ, not a medical expert, and in any event, the record in this case does not reflect strong evidence of disability due to a mental health impairment.  Regarding the testimony of Plaintiff's husband,

the Commissioner suggests the ALJ's failure to again obtain and address his testimony was harmless because the testimony was cumulative to that of the Plaintiff.  As for the case law cited by Plaintiff, the Commissioner contends it is distinguishable and non-controlling.  (Doc. 18 at 6-8).

Here, because I conclude that the ALJ's finding that Plaintiff did not suffer a severe mental impairment during the pertinent period under review is supported by substantial evidence, any error made in complying with the Appeals Council's directives is harmless and Plaintiff is not entitled to relief on either of these claims.

At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe.  20 C.F.R. § 404.1520.  Under this regulation, if the claimant does not have an impairment or combination of impairments which significantly limits her ability to do basic work activities, then she is not disabled.[7]  The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)).  In application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected.  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).  An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  *Id.*

---

[7]Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment.  *Yuckert*, 482 U.S. at 142.

However, ". . .  the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987).  Thus, to the extent the Plaintiff urges there was error at step two in the failure to find her depression a severe impairment, she is incorrect as the ALJ did credit her with other severe impairments at this step.  Significantly, Plaintiff also fails to demonstrate those functional limitations attributable to her mental state during the period under review which were not properly considered by the ALJ at subsequent steps in the evaluation process.

As for the medical evidence, Plaintiff cites statements from two sources, Dr. Prockop and Dr. Shahnasarian.  However, in the light of the whole of the medical and other evidence, a review of these records reveals little to support the claim of a severe condition as such is defined under the Act.  Dr. Prockop, a neurologist, saw Plaintiff in early 1999 on referral from a treating doctor for evaluation of her neck and left upper and lower extremities.  In a January 1999 letter, the doctor noted that Plaintiff admitted to mild depression with little interest in life any more.  However, on mental status examination, he found Plaintiff oriented and alert with good recall.  She scored "quite good" on a "mini mental test" he administered.  By his assessment, she was neurologically intact but with an unstable spinal column after a motor vehicle accident.  She also suffered depression which accounted for her history of poor memory despite adequate performance on the mini mental exam.  He recommended a repeat course of physical therapy.  (R. 535-37).  He also instituted a therapeutic trial of Zoloft "to see if this helps lift her depression and therefore alleviate her pain and disability syndrome."

(R. 537).  In a follow-up note in February 2009, the doctor found Plaintiff doing better after physical therapy.  He noted that she appeared more cheerful with a less painful look and more mobility.  Plaintiff had discontinued the Zoloft because it made her feel like a zombie. (R. 523-24).  Dr. Prockop recommended continued physical therapy and massage at home.

Dr. Shahnasarian, a specialist in career guidance and vocational rehabilitation, completed a vocational rehabilitation evaluation of Plaintiff in August 1999 after Plaintiff's date last insured.  By his assessment, her injuries appeared to have precluded her from pursuing other work opportunities and rendered her disabled.  His report reflects that, among numerous subjective complaints about her pain, Plaintiff indicated that she was irritable, anxious, angered fast, and was frustrated.  She reported conflict with her family and not wanting to be around people.  Dr. Shahnasarian assessed Plaintiff was very depressed and experiencing significant, but unspecified problems, from her depression.  (R. 550-74).

Records from both sources were addressed by the ALJ.  Dr. Prockop's reports were fairly recited, as were those from Dr. Shahnasarian.  As for the opinion evidence, the ALJ rejected the disability opinion by Dr. Shahnasarian because it was unsupported by any rationale and was contrary to the opinions of Drs. Gomes, Dunn, Barclay, Inga and Craven. By my consideration, nothing in Dr. Prockop's reports require the conclusion of a severe mental impairment.  As for Dr. Shahnasarian, apart from his observation that she was seriously depressed, he offered no indication of functional limitations in connection with her depression.  As stated above, the evaluation and weighing of the medical evidence and any conflict in the evidence is left to the ALJ.  Here, I am obliged to conclude from these records, as well as the medical record as a whole, that there is substantial evidence to support a

conclusion that Plaintiff did not suffer a severe mental impairment during the period in question.  As for the additional evidence from Plaintiff's husband, as discussed below, it simply does not dictate a different conclusion for the period under consideration.

Regarding the order of remand by the Appeals Council dated January 5, 2006, several general concerns were addressed.  Two are applicable to the instant claims.  One concern pertained to the ALJ's finding of no severe mental impairment.  According to the Appeals Council, while the ALJ reviewed evidence of Plaintiff's mental impairment during the time period *after* her insured status expired on June 30, 1999, he failed to do so for the period *prior* to that date.  (R. 726).[8]  As the discussion above reveals, the evidence from the period prior to the date last insured was addressed on remand.  Similarly, the Appeals Council indicated concern with the ALJ's finding that Plaintiff's allegations regarding her limitations were not totally credible.  According to the Appeals Council, the ALJ did not evaluate Plaintiff's subjective complaints during the period at issue prior to expiration of her insured status or assess her credibility in accordance with the applicable standard, nor did the ALJ evaluate the hearing testimony of the Plaintiff's husband, which spoke to Plaintiff's physical and mental symptoms during the period at issue.  (R. 727-28).  On remand, the ALJ was directed to "take the appropriate actions to resolve the issues cited above."  (R. 728).  The Appeals Council also explicitly directed the ALJ to "[o]btain medical expert testimony to clarify the claimant's physical and mental limitations and maximum residual functional

---

[8]The Appeals Council noted that evidence addressing Plaintiff's claimed depression during the pertinent period was available, namely, the report by Dr. Prockop and the testimony of Plaintiff's husband, and the ALJ did not evaluate that evidence in accordance with the applicable regulations.  (R. 727).

capacities during the period at issue prior to expiration of her disability insured status on June

30, 1999." *Id.*

As set forth above, the ALJ did call a medical expert although not one specializing in

mental health.  His summary of Plaintiff's medically determinable impairments did not

identify any mental impairments.  Neither the ALJ nor Plaintiff's counsel asked the medical

expert any specific questions about Plaintiff's claimed depression or resulting limitations.[9]

Plaintiff and her husband were available to testify at the last administrative hearing

but were not called.  Plaintiff's counsel advised the ALJ at the outset that Plaintiff's husband

was present, but the ALJ responded that the husband had testified at the last hearing and since

this was a Title II case and the Appeals Council's primary concern on remand was to obtain

medical expert testimony, such testimony would occur first and they could proceed thereafter

depending on what transpired.  (R. 1011).  For whatever reason, Plaintiff's counsel did not

revisit the matter after the expert testimony was taken.

Section 404.977(b) of Title 20 of the Code of Federal Regulations provides that

"[t]he administrative law judge shall take any action that is ordered by the Appeals Council

---

[9]Dr. Linder did indicate that testimony about the validity of psychological testing was beyond his expertise.  Thus, when asked to comment on "some high Waddell scores" in a work capacity assessment, he indicated that it was beyond his professional reach to comment on the overall validity of psychological testing.  The assessment at issue was one by Kelly A. Orr in April 1999 at HealthSouth.  By her assessment, Plaintiff could do sedentary work and perhaps more.  She reported that a high Waddells score suggested magnified illness behavior and that Plaintiff's possible submaximal effort suggested her true abilities might not be revealed by the testing. (R. 342-48).  The testing performed related to Plaintiff's physical capacity and not her psychological condition.  Thus, it is unclear to me that it suggests anything about Plaintiff's mental state.  In any event, this bit of testimony alone does not reveal that Dr. Linder was not qualified to testify about his review of the medical record, including the mental health record, had he been asked about it.

and may take any additional action that is not inconsistent with the Appeals Council's remand." "Violation of a regulation constitutes error, and will constitute a basis for reversal of agency action and remand when a reviewing court concludes that the error is not harmless." *Pearson v. Barnhart*, No. 1:04-cv-300, 2005 WL 1397049, at *4) (E.D. Tex. May 23, 2005) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).  An error is harmless where it is inconceivable that a different administrative result would have been reached absent the error.[10]  *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank*, 326 F.3d at 622)); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (providing that error is harmless unless there is reason to think that remand might lead to a different result); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (defining harmless error in context of social security cases as not affecting the ultimate determination of disability).  Failure to abide by an order of the Appeals Council may constitute reversible error.  *Pettaway v. Astrue*, No. CA 08-0171-C, 2008 WL 5111175, at *4 (S.D. Ala. Dec. 3, 2008); *Allen v. Astrue*, No. 06-cv-018, 2007 WL 1276933, at *3 (E.D. Pa. May 1, 2007); *but see Sanabria v. Astrue*, 8:06-cv-2252-T-30TGW, 2008 WL 687391, at *3 (M.D. Fla. Mar. 11, 2008) (noting that plaintiff failed to cite any authority supporting proposition that a failure to follow directions from the Appeals Council constitutes reversible error); *Kastman v. Barnhart*, No. 01 C 0150, 2002 WL 1461499, at *9 (N.D. Ill. July 3, 2002) (expressing doubt as to whether that type of agency action should be reviewed by the court as a final decision subject to judicial review).

---

[10]The Eleventh Circuit has not defined the scope of the harmless error inquiry in this context.

By my review, while the concerns of the Appeals Council could have been better addressed by the ALJ *and* Plaintiff's counsel, there simply was no violation of the Appeals Council's directive in calling Dr. Linder as the medical expert. Nor was there error in failing to again call the Plaintiff's husband to testify.[11] Plaintiff's claims to the contrary are without merit.[12] I do find error in the failure of the ALJ to set forth in the decision his evaluation of the husband's testimony and any credibility findings regarding the same as directed by the Appeals Council. However, this error is harmless. As set forth above, Plaintiff's medical record failed to support that she had a severe mental impairment on or before her date last insured and a review of the husband's prior testimony suggests that it merely corroborated his wife's testimony that she became irritable and hard to get along with and her memory and concentration were not the same. While the ALJ failed to make any credibility findings as to Plaintiff or her husband in his decision after the third hearing in December 2002, the instant

---

[11]The Appeals Council directed that the ALJ "[o]btain medical expert testimony to clarify the claimant's physical and mental limitations and maximum residual functional capacity during the period at issue . . ." (R. 728). The use of a medical doctor was not contrary to this express directive. As for the husband, it directed proper evaluation of the testimony of the Plaintiff's husband, not his further testimony. (R. 727-28).

While I find it troubling that the ALJ did not follow-up on the ME's narrative identifying Plaintiff's medically determinable impairments with any questions about her mental health, it is equally troubling that Plaintiff's counsel wholly failed to make any specific inquiry during her lengthy questioning of the witness. While counsel did request a mental health adviser at the conclusion of the hearing, she apparently chose not to explore the matter of Plaintiff's mental condition with the medical expert. In the circumstances, Plaintiff cannot now be heard to complain about the lack of record development.

[12]It is worth noting that Plaintiff raised these same complaints with the Appeals Council in her request for review. The Appeals Council rejected the complaint stating, ". . . , we have reviewed the [ALJ's] decision and find that he addressed all the concerns of the Appeals Council, and in particular that he obtained the additional testimony and evidence necessary for him to adjudicate your claim." (R 14).

decision reflects that the ALJ discounted Plaintiff's subjective testimony in accordance with the applicable regulations as not supported by the medical record.  (R. 33).  I find it inconceivable that any different conclusion would be reached concerning the husband's corroborating testimony were a remand for this reason be ordered.  Here, whether a mere oversight or the product of the ALJ's obstinance, I am obliged to agree with the Commissioner that any error in not also assessing the husband's testimony is harmless.  A fair reading of Mr. Young's former testimony reveals that it was duplicative of Plaintiff's testimony, which the ALJ adequately discounted.  *See Tieniber v. Heckler,* 720 F.2d 1251, 1254-55 (11th Cir. 1983) (citing *Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir.1981)); *Osborn v. Barnhart*, No. 06-11269, 2006 WL 2447683, at *11 (11th Cir. Aug. 24, 2006).

       In sum, Plaintiff is not entitled to a remand on either of these claims.

       By her second claim, Plaintiff argues that the ALJ erred in applying this circuit's pain standard when considering her subjective allegations.  In particular, Plaintiff contends that the ALJ failed to properly analyze her allegations because he did not examine the intensity, persistence or limiting effects of her pain.  Even assuming the ALJ's statements are construed as an explanation for discrediting her testimony, Plaintiff argues that any such statements are not supported by substantial evidence.  Rather, Plaintiff broadly proclaims that "all of the substantial evidence corroborates [her] allegations."  (Doc. 17 at 6-7).

       In response, the Commissioner maintains that the ALJ properly applied the applicable standard.  He maintains further that the ALJ appropriately found Plaintiff's testimony not entirely credible in light of findings made by her treating and examining doctors.  To this end, the Commissioner contends that notes from the following doctors

supports the ALJ's decision to discount Plaintiff's subjective allegations: Michael Craven,

M.D. a treating internist; Francisco Gomes, M.D., a neurosurgeon; Michael Dunn, D.C., a

chiropractor; Jorge Inga, M.D., a neurosurgeon,; Robert Callahan, M.D., an orthopedic

surgeon; Leon Prockop, M.D., an orthopedic physician; James Murphy, M.D., an orthopedic

surgeon, and Owen Linder, M.D., the medical expert called by the ALJ.  (Doc. 18 at 9-12).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed

by a three-part "pain standard" that applies when a claimant attempts to establish disability

through subjective symptoms.  By this standard, there must be evidence of an underlying

medical condition and either objective medical evidence that confirms the severity of the

alleged symptom arising from the condition or evidence that the objectively determined

medical condition is of such severity that it can be reasonably expected to give rise to the

alleged pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v.*

*Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  If the ALJ determines not to credit

subjective testimony, he must articulate explicit and adequate reasons for his decision.  *Foote*

*v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*,

941 F.2d 1529, 1532 (11th Cir. 1991).  A reviewing court will not disturb a clearly articulated

credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowen*, 831

F.2d 1007, 1012 (11th Cir. 1987).

Here, the decision reveals that the ALJ recognized that this was a "pain" case as well

as his obligation to consider the Plaintiff's subjective complaints to the extent that they were

revealed by or reasonably consistent with the evidence, objective and otherwise.  *See* (R. 33).

By this evidence, the ALJ credited Plaintiff with cervical disc disease with spondylosis, spinal

21

stenosis, lumbosacral strain, and resulting pain, but he rejected such pain as rendering the

Plaintiff disabled from all work.  Thus, to the extent that Plaintiff complains that the ALJ

failed to follow the applicable standard, the decision reflects otherwise.[13]  Moreover, the ALJ

acknowledged with reasonable accuracy the full litany of Plaintiff's subjective complaints,

including her testimony about the location, duration, frequency, and intensity of her pain and

other symptoms, as well as the resulting limitations alleged.  *See id.* at 26-27, 33.

Furthermore, the reasons articulated by the ALJ for discounting Plaintiff's claims of

*disabling* pain and limitations are supported by the record.  Thus, the ALJ explained:

> The undersigned finds the claimant's statements concerning her impairments and their impact on her ability to work not entirely credible in light of her treating and examining physician's findings during examination.  The [claimant] has testified that she was only able to stand or walk for about ten minutes, could not sit for more than five minutes comfortably before her leg becomes numb, and she stated that she could lift about five pounds.  However, the undersigned notes that the claimant has been shown to magnify her symptoms as shown by her high Waddell scores. This is further supported by Dr. Craven's statement of physical capacity dated April 8, 1997, that showed that the claimant had the ability to occasionally lift up to ten pounds and that she was limited to standing or walking for thirty minutes without interruption for two to four hours during an eight hour workday.  Dr. Craven also reported that the claimant had the ability to sit for up to one hour without interruption for four to six hours during an eight hour workday.  It is further noted that Dr. Gomes and Dr. Dunn both indicated that the claimant had the ability to perform sustained work activities.  Therefore, when considering the

---

[13]Although the ALJ did not explicitly reference this Circuit's pain standard, he recognized and applied the similar standard, citing to SSR 96-7p and the regulatory standard at 20 CFR § 404.1529 (R. 33), which discuss the consideration of a claimant's subjective allegations of pain.  Proper application of the ruling and regulatory standard will satisfy the "pain standard."  *See Wilson*, 284 F.3d at 1225-26.

> medical evidence as a whole the undersigned finds that the
> claimant's physical impairments impose some functional
> limitations; however, the medical evidence does not support
> the claimant's statements concerning her impairments, and
> their impact on her ability to work.

(R. 33). While Plaintiff complains that these reasons are unsupported, her only demonstration

to the contrary is her summary assertion that her unidentified allegations are corroborated by

all of the substantial evidence.  (Doc. 16 at 7).  Plaintiff does not identify specific evidence

that supports her allegations.  Nor does she address which particular subjective allegations the

ALJ wrongly considered or ignored.  In short, Plaintiff simply fails to demonstrate that she is

entitled to relief on this claim.

By her third claim, Plaintiff argues that the ALJ erred at step five by finding that she

was capable of making an adjustment to other work that existed in significant numbers in the

national economy.  According to Plaintiff, the evidence relied upon by the ALJ, namely, the

testimony of the VE and ME, demonstrated she was able to work only seven hours a day and

work on a regular and continuing basis requires the ability to work eight hours a day, five

days a week.  In particular, Plaintiff notes that the ME initially testified that she could work

for only seven hours total in an eight-hour day – she could stand/walk for a total of one hour

and sit for a total of six hour.  That limitation combined with the VE's testimony that no jobs

would be available if an individual could not work a full eight-hour workday, would render

her disabled.[14]  (Doc. 17 at 7-8).

---

[14]In support, Plaintiff cites to *Kelley v. Apfel*, 185 F.3d 1211, 1214-15 (11th Cir. 1999)
for the proposition that the a finding of not disabled at step five requires a finding that the
claimant retains the functional capacity to perform work on a regular and continuing basis,
which means eight hours a day, five days a week, or an equivalent schedule.  (Doc. 17 at 8).

In response, the Commissioner urges that Plaintiff misunderstood the ME's testimony.  According to the Commission, a review of the hearing transcript reveals that the ME found that Plaintiff could stand for one hour and walk for one hour, not that she could walk for one hour and could not stand at all.  Thus, the Commissioner urges that Plaintiff fails to establish disability on this basis because the ME opined that she could sit (six hours), stand (one hour), and walk (one hour) for a total of eight-hours.  (Doc. 18 at 12-13).

Upon review of the administrative testimony, I agree with the Commissioner.  Although the record reveals some confusion as to whether Dr. Linder initially opined Plaintiff could walk for one hour and stand for one hour or whether she could walk/stand for one hour, *see* (R. 1031-32), he subsequently clarified his testimony.  *See* (R. 1033-36).  Thus, the ME testified that Plaintiff could walk for one hour and stand for one hour.  (R. 1034-36).  This two-hour total of walking and standing, when combined with six hours the ME indicated Plaintiff could sit, provides for an eight-hour workday and defeats Plaintiff's claim.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

Respectfully submitted this
30th day of July 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record