UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLENE YOUNG,

    Plaintiff,

v.                                Case No. 8:09-cv-1056-T-17TBM

MICHAEL J. ASTRUE,

Commissioner of the United States

Social Security Administration,

    Defendant.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION**

This cause comes before the Court following a review by U.S. Magistrate Judge Thomas McCoun whic recommends affirming the Commissioner of the United States Social Security Administration's decision, denying Plaintiff-Appellant Social Security disability benefits.[1] Because the decision of the Magistrate is in accordance with the correct legal standards, and is otherwise supported by substantial evidence, this Court affirms.

    I.      STANDARD OF REVIEW

Upon a timely and specific objection to a finding of fact in the **report** and **recommendation**, the district court should review both factual and legal findings in the report and recommendation *de novo*. 28 U.S.C. §636(b)(1); *U.S. v. Raddatz*, 447 U.S. 667, 673 (1980); *Gropp v. United Airlines, Inc.*, **817 F. Supp. 1558, 1562 (M.D. Fla.1993)** (providing for cases where no timely and specific objections were made). After such review, the judge may accept,

---

[1] Report and Recommendation (R&R) by Magistrate Judge Thomas B. McCoun III, filed on July 30, 2010 (Doc. 19). Case number: 8:09-cv-01056-EAK-TBM.

reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Additionally, the judge may receive further evidence or recommit the matter to the magistrate judge with instructions. *Id.*

Because Plaintiff-Appellant timely filed her written objection to the Magistrate's R&R, this Court shall conduct a review of the case and analyze both factual and legal findings by the Magistrate *de novo*.

Further, it is the role of the district court to decide whether the Commissioner's factual findings are supported by substantial evidence and whether correct legal standards were applied. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).

A district court reviews an administrative law judge's (ALJ's) findings for substantial evidence. *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982); *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The reviewing court must determine whether the evidence in its totality, fairly considered, affords a basis for a conclusion by a reasonable person that the findings under review have substantial support. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988) (citing **Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir.1983)**; **Smallwood v. Schweiker, 681 F.2d 1349, 1351 (11th Cir.1982)**; **Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir.1982)**). Substantial evidence is more than a scintilla of evidence and must do more than create a suspicion of the existence of a fact in order to be established; it means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997); *Richardson v. Perales*, 402 U.S. 389, 398 (1971). Substantial evidence is less than preponderance. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citing **Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir.1971)**); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Boyd v. Apfel*, 239 F.3d 698 (5th Cir. 2001); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence is considered a legal conclusion rather than a finding of fact. *Roberts*, 858 F.2d at 701. No deference to the Commissioner's or Magistrate Judge's legal conclusions is given on this review. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). However, findings that are made by the Commissioner as to any fact are to be found conclusive by the Court if supported by substantial evidence. 42 U.S.C.A. §405(g).

II. **BACKGROUND**

Plaintiff-Appellant was involved in a rear-ended motor vehicle accident, as a result of which she sustained injuries to her neck and back. (R. 27; R. 1012). Plaintiff-Appellant's disability started following the accident, on July 19, 1995.[2] (R. 26). During her testimony, she indicated she had pain in her neck, low back area, left leg, and left shoulder. (R. 26). Further, she stated that she experienced dizziness, and her left knee on occasion gave out. (R. 27). The pain in her neck was sharp at one point but is more of a nagging pain now. (R. 27). According to her testimony, the back pain is worse when she sits. (R. 27). Plaintiff-Appellant described having memory and concentration problems. (R. 27). She also stated that she could stand or walk for

---

[2] At that stage, Plaintiff-Appellant was forty-four years old. (R. 34). As additional information, Plaintiff-Appellant has a ninth grade education. (R. 1047).

about ten minutes before her low back area and left leg began to hurt. (R. 27). She alleged not being able to sit for more than five minutes comfortably before her leg would become numb and tingle. (R. 27).

Two years after the motor vehicle accident, Plaintiff-Appellant underwent surgery on her neck. (R. 1014). The surgery was not a success, and Plaintiff-Appellant continued to have pain after the surgery. (R. 1015).

The record reflects that Dr. Laurie Barclay, a neurologist who completed interrogatories submitted to her in connection with the disability hearing held in October 1999, opined, based on the review of Plaintiff-Appellant's entire medical history up to February 20, 2001, that Plaintiff-Appellant did not have any physical restrictions. (R. 31). The record shows Plaintiff-Appellant was seen by Dr. Gilson Webb, a psychiatrist, who completed Plaintiff-Appellant's psychiatric and psychosocial evaluation. (R. 31). Despite diagnosing Plaintiff-Appellant with an adjustment disorder with depressed mood, Dr. Webb noted Plaintiff-Appellant had good ability in making performance adjustments and in personal-social adjustment. (R. 32).

### III. PROCEDURAL HISTORY

Plaintiff-Appellant applied for disability benefits on March 28, 1996. (R. 24). She maintained her disability started on July 19, 1995. (R. 24). Plaintiff-Appellant's claim for disability benefits was originally denied on August 22, 1997 (R. 24). Plaintiff-Appellant appealed that decision. (R. 24). From March 28, 1996 up to present, four administrative hearings were conducted. (R. 24).

The fourth and final administrative hearing is pertinent to this appeal. This hearing was held on July 17, 2006, before Administrative Law Judge Ayer. (R. 1010). At that hearing,

Plaintiff-Appellant was represented by counsel. (R. 1010). A vocational and a medical expert were present at the hearing. (R. 1010). The ALJ asked the medical expert (ME), Dr. Owen Linder, specific questions pertaining to the period from July 19, 1995 up to June 30, 1999.[3] (R. 1012). Dr. Linder indicated that Plaintiff-Appellant had a cervical strain that gave radicular symptoms in her arms; she also had low back symptoms. (R. 1013). Based on his review of the record, the medical expert opined, however, that during the period in question, Plaintiff-Appellant could perform sedentary work. (R. 1019). When asked why his opinion regarding Plaintiff-Appellant's ability to return to work varied from that rendered previously by Dr. Shahnasarian, Dr. Linder replied that his was based solely on objective organic factors, meaning that it was based on there being no muscle atrophy and no neurological deficit of any significance. (R. 1021). Dr. Shahnasarian's opinion, on the other hand, was based not just on purely objective organic factors but on Plaintiff-Appellant's unquantifiable and unmeasurable perception of pain. (R. 1021). Dr. Linder further testified that, based on his review of the record, Plaintiff-Appellant could work an eight-hour day with six hours sitting, one hour walking and one hour standing. (R. 1032, 1033, 1035).

The vocational expert (VE), Dr. Steven Simon, testified next. (R. 1047). He opined that Plaintiff-Appellant, given her limitations, could perform such jobs as an information clerk (for which there are 2,000 jobs locally in the Tampa Bay area, 13,000 jobs statewide, and 200,000 jobs nationally), an appointment clerk (1,700 jobs locally, 10,000 jobs statewide, and 179,000 jobs nationally), an order clerk (450 jobs locally, 2,700 jobs statewide, and 50,000 jobs nationally), and a cashier checker or auction clerk (collectively 3,000 jobs locally, 19,000 jobs statewide and 297,000 jobs nationally). (R. 35, 1049–1050).

---

[3] This is the period at issue based on the fact that Plaintiff-Appellant's disability insured status expired on June 30, 1999, in accordance with 20 C.F.R. §404.1520(a).

Subsequently, the ALJ denied Plaintiff-Appellant's claim. (R. 25). Because this time, unlike the three previous occasions, the Appeals Council denied Plaintiff-Appellant's request for review, the ALJ's decision became the final decision of the Commissioner, thereby fulfilling a prerequisite that must be met before a District Court has subject matter jurisdiction to review a claim.[4] (R. 13).

Plaintiff-Appellant timely appealed the Commissioner's decision, which was reviewed by Magistrate Judge Thomas McCoun, who denied Plaintiff-Appellant social security disability benefits.[5] Plaintiff-Appellant timely sought review of the Magistrate's R&R with this Court.

## IV. DISCUSSION

Plaintiff-Appellant contends in her written objections[6] that (1) the ALJ erred when he did not comply with the Order of the Appeals Council by failing to evaluate the hearing testimony of Plaintiff-Appellant's husband, failing to assess the husband's credibility, and refusing to obtain the testimony of a medical expert to clarify the mental limitations during the period at issue prior to expiration of her disability insured status on June 30, 1999; (2) the ALJ failed to make a proper credibility finding of Plaintiff-Appellant's testimony, and erred in improperly discrediting Plaintiff-Appellant's complaints of pain and subjective symptoms; (3) the ALJ erred in determining that Plaintiff-Appellant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy; and (4) the ALJ erred in

---

[4] *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).

[5] Report and Recommendation (R&R) by Magistrate Judge Thomas B. McCoun III, filed on July 30, 2010 (Doc. 19). Case number: 8:09-cv-01056-EAK-TBM.

[6] Plaintiff Charlene Young's Written Objections to Proposed Findings in Report and Recommendation of Magistrate, (Doc. 20 at 2–5), filed with the Middle District of Florida, Tampa Division, on August 10, 2010.

finding that Plaintiff-Appellant's depression did not cause a significant limitation in Plaintiff-Appellant's ability to perform basic work activities.

This Court will address Plaintiff-Appellant's objections in turn.

First, Plaintiff-Appellant maintains that the ALJ erred when he did not comply with the Order of the Appeals Council by failing to evaluate the hearing testimony of Plaintiff-Appellant's husband and by failing to assess the husband's credibility.

During the fourth and final July 17, 2006, hearing, the ALJ indicated that the husband had testified at a previous hearing, and therefore the record already contained his testimony. (R. 1011). Further, since the primary concern of the Appeals Council was the medical expert testimony, it was the medical expert's testimony, aimed at clarifying Plaintiff-Appellant's physical and mental limitations and maximum residual functional capacities, that constituted the main focus of the hearing.[7] Dr. Linder was available to Plaintiff-Appellant's counsel for questioning, but counsel never questioned Dr. Linder about Plaintiff-Appellant's mental limitations. (R. 1010–1047).

As for the fact that Plaintiff-Appellant's husband did not testify at the fourth and final hearing, counsel for Plaintiff-Appellant did not object to this upon completion of the medical expert testimony. (R. 1011, 1059–1060). Furthermore, when Plaintiff-Appellant's counsel specifically asked the vocational expert if he needed to hear the husband's testimony in order to render his opinion, the VE replied that he did not. (R. 1056–1057).

---

[7] Order of Appeals Council by Administrative Appeals Judge Thomasine B. Carter in the Case of Charlene Young, dated January 5, 2006. (R. 726–728).

Even assuming *arguendo* that the husband's testimony was necessary during this final hearing, notwithstanding the fact that the record already contained his testimony from the third hearing, the fact that the husband was not allowed to testify at this fourth and final hearing was, at most, harmless error.

Harmless errors are those that do not affect the ALJ's determination that a claimant is not entitled to benefits. **Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir.1990)**; *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see generally Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (noting the ALJ's procedural error was harmless) and *McKinght v. Astrue*, 340 Fed. Appx. 176, 181 n. 1 (5th Cir. 2009) (noting the procedural error in the case did not prejudice claimant). The harmless error inquiry involves determining "whether the ALJ would have reached the same decision denying benefits, even if he had followed the proper procedure." *Gilmore v. Astrue*, 2010 WL 989635 at *24, (N.D. Fla. Feb. 18, 2010) (citing **Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir.2003)**). Error is harmless unless there is reason to think that remand might lead to a different result. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). The policy behind harmless error; is to preserve judgment and avoid waste of time. **Mays v. Bowen, 837 F.2d 1362** (5th Cir.1988) (citing **Gulf States Utilities Co. v. Ecodyne Corp., 635 F.2d 517, 520** (5th Cir. Jan. 1981)).

The undersigned believes that failure to call Plaintiff-Appellant's husband to testify yet again was at most harmless error because the husband's testimony would not have decreased the magnitude of other substantial evidence in the record contradicting the husband's testimony.

As for the need to have a special psychiatric expert evaluate Plaintiff-Appellant, there was simply no explicit directive by the Appeals Council directing the ALJ to call a special psychiatric expert to the stand.[8] The ALJ followed the Appeals Council directive fully and did not commit error.

Second, Plaintiff-Appellant maintains the ALJ erred in failing to make a proper credibility finding of the Plaintiff-Appellant's testimony, and erred in improperly discrediting Plaintiff-Appellant's complaints of pain and subjective symptoms.

As for the ALJ's finding regarding of the credibility of Plaintiff-Appellant's testimony, this finding will not be disturbed. It is the function of the Commissioner, and not of this Court, to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971)[9].

As for subjective symptoms of pain, these are governed by a three-part "pain standard": (1) there must be evidence of an underlying medical condition and either; (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing **Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir.1986)**). An ALJ must clearly articulate explicit and adequate reasons for not crediting subjective testimony. **Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir.1987)**. A reviewing court will not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record. *Id.* at 1012.

---

[8] The exact wording of the directive is to "obtain medical expert testimony to clarify the claimant's physical and mental limitations and maximum residual capacities during the period at issue." (R. 728).

[9] Decisions of the federal Fifth Circuit rendered prior to 1981 are binding on the Eleventh Circuit.

In this case, the ALJ acknowledged Plaintiff-Appellant had pain as a result of her cervical disc disease with spondylosis and lumbosacral strain, but the ALJ disagreed, based on his evaluation and weighing of the objective medical evidence, that the pain rendered Plaintiff-Appellant disabled. (R. 32–33). Furthermore, the ALJ clearly articulated his credibility finding as reflected in the record. (R. 33). Because the ALJ's credibility finding regarding Plaintiff-Appellant's subjective pain is substantially supported by evidence and is clearly articulated, this Court will not disturb it.

Third, Plaintiff-Appellant contends the ALJ erred in determining that Plaintiff-Appellant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. When making this determination, the ALJ considered Plaintiff-Appellant's residual functional capacity, age, education, and work experience in conjunction with 20 C.F.R. §404(P) Medical-Vocational Guidelines. (R. 35). These guidelines are based on the level of exertion an individual can apply to a job. (R. 35). Plaintiff-Appellant could perform unskilled sedentary work with some limitations. (R. 35). She could sit for up to six hours, walk for an hour, and stand for another hour, making it possible for her to work a full eight-hour day. Based on these limitations, the ALJ asked the VE whether jobs existed in the national economy for an individual with Plaintiff-Appellant's age, education, work experience, and residual functional capacity. (R. 35). The VE testified that, given all these factors, Plaintiff-Appellant could perform such jobs as an information clerk (for which there are 2,000 jobs locally, 13,000 jobs statewide, and 200,000 jobs nationally), an appointment clerk (1,700 jobs locally, 10,000 jobs statewide, and 179,000 jobs nationally), an order clerk (450 jobs locally, 2,700 jobs statewide, and 50,000 jobs nationally), and a cashier checker or auction clerk (collectively 3,000 jobs locally, 19,000 jobs statewide and 297,000 jobs nationally). (R. 35, R. 1049–1050).

Fourth and final, Plaintiff-Appellant contends the ALJ erred in finding that Plaintiff-Appellant's depression did not cause a significant limitation in Plaintiff-Appellant's ability to perform basic work activities during the period in question.

Plaintiff-Appellant cites previous medical evidence in the form of Dr. Prockop's and Dr. Shahnasarian's statements to support her claim of a severe mental impairment. However, a review of these statements does not support Plaintiff-Appellant's claim. Dr. Linder, the ME at the final hearing, opined as to the differences between his and Dr. Shahnasarian's conclusions and stated that Dr. Linder's conclusions, unlike Dr. Shahnasarian's, were based solely on objective organic factors. (R. 1021). Thus, Dr. Linder's and Dr. Shahnasarian's opinions conflict. However, any conflict between medical evidence, as well as evaluating and weighing the medical evidence, is left to the ALJ. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (emphasizing that the resolution of any conflict in the evidence, including conflicting medical opinions, and the determination of witness credibility, are not for the reviewing appellate court, and stating that "such functions are solely within the province of the Secretary").

Additionally, as the record reflects, Plaintiff-Appellant's counsel had a chance to clarify and further develop the record by putting pertinent questions to Dr. Linder at the fourth and final hearing. Counsel never questioned Dr. Linder about whether his review of the record revealed that Plaintiff-Appellant might have had any mental limitations. (R. 1011–1047).

This Court will not disturb the ALJ's finding that Plaintiff-Appellant's depression did not cause a significant limitation in Plaintiff-Appellant's ability to perform basic work activities during the period in question.[10]

---

[10] Through June 30, 1999, which is Plaintiff-Appellant's date last insured. *Supra* n. 3.

In light of the foregoing and the record as a whole, this Court finds the ALJ's decision that Plaintiff-Appellant could make a successful adjustment to jobs such as those specified above, and that such jobs existed in significant numbers in the national economy, and therefore that Plaintiff-Appellant was not entitled to disability benefits, is supported by substantial evidence.

V.   **CONCLUSION**

This Court has performed a thorough and independent review of the record and of the Report and Recommendation by United States Magistrate Judge Thomas B. McCoun III. Because the Commissioner's decision is in accordance with the correct legal standards and is supported by substantial evidence, the Magistrate's Report and Recommendation affirming it, which was rendered and filed on July 30, 2010 (Doc. 19) is affirmed.  Accordingly, it is

**ORDERED**  that the report and recommendation (Docket No. 19)  be **adopted** and **incorporated by reference**; and the Court enters judgment for the Defendant. The Clerk of Court is directed to enter judgment for the defendant, denying benefits, to close the case,  and to terminate any pending motions.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 29th day of September, 2010.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies furnished to:
All Parties and Counsel of Record